In the United States District Court
for the Southern District of Indiana

| | |
|---|---|
| Lyle Guinnup, *On behalf of himself and others similarly situated*, Plaintiff, v. Mad Mushroom Franchise Group, LLC. Defendant. | Case No. Judge Magistrate Judge Jury Demand Endorsed Hereon |

Collective Action Complaint

1. Lyle Guinnup, on behalf of himself and all similarly-situated individuals, brings this action against Mad Mushroom Franchise Group, LLC. ("Mad Mushroom" or "Defendant"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendant's willful failure to compensate Plaintiff and similarly-situated individuals with minimum and overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2. Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who worked for Defendant at any point in the past three (3) years and who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendant. The members of the proposed FLSA Collective are referred to hereafter as the "Collective Members".

**JURISDICTION AND VENUE**

3. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA.

4.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant is an Indiana limited liability company, a substantial part of the events giving rise to the claim herein occurred in this district, and Defendant is headquartered in West Lafayette, Indiana.

## PARTIES

5.     Plaintiff Lyle Guinnup resides in Lafayette, Indiana.

6.     Plaintiff works as a delivery driver for Defendant's Mad Mushroom Pizza store located at 3014 Underwood Street, Lafayette, Indiana 47904.

7.     Plaintiff is an "employee" of Defendant as defined by the FLSA.

8.     Plaintiff has given written consent to join this action, a copy of which is attached to this Complaint as "**Exhibit A**".

9.     Upon information and belief, Defendant owns and operates a chain of approximately five (5) Mad Mushroom Pizza restaurants.

10.    Defendant is an Indiana limited liability company.

11.    Mad Mushroom Pizza is an "employer" of Plaintiff and similarly situated delivery drivers as that term is defined by the FLSA.

12.    Upon information and belief, Mad Mushroom Pizza applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of Defendant's Mad Mushroom Pizza locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and reimbursement of automobile and delivery related expenses.

13. At all relevant times, Mad Mushroom Pizza maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, and other practices.

14. At all relevant times, Mad Mushroom Pizza has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

15. Mad Mushroom Pizza's gross revenue exceeds $500,000 per year.

## LEGAL STANDARDS APPLICABLE TO DEFENDANT'S EXPENSE REIMBURSEMENT VIOLATIONS

16. The FLSA prohibits any "kickback" of job-related expenses which would cut into the minimum wage or overtime otherwise required to be paid under the Act. Specifically, 29 C.F.R. § 531.35 provides:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the **minimum or overtime wages** required to be paid him under the Act. (emphasis added).

17. Pizza delivery drivers' vehicle expenses are "tools of the trade." "In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered." *Hatmaker v. PJ Ohio*, LLC, No. 3:17-cv-146, 2019 WL 5725043, at *3 (S.D. Ohio Nov. 5, 2019); *see also, e.g.*, *Benton v. Deli Management, Inc.*, 396 F.Supp.3d 1261, 1269-74 (N.D. Ga. Aug. 8, 2019)

3

("[Employer's] need for a vehicle is directly incidental to its business."); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 258 (S.D.N.Y. Oct. 21, 2008) ("there is substantial legal authority for the proposition that mechanisms for transportation- typically motor vehicles-can be tools of the trade."); *Perrin v. Papa John's Int'l, Inc.*, 114 F.Supp.3d 707, 729-30 (E.D. Mo. July 8, 2015) (denying summary judgment that fixed costs could be excluded from "tools of the trade").

18. The relevant regulation governing such "kickbacks" does not define a methodology for calculating mileage rates or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. *See* 29 C.F.R. § 531.35.

19. In light of this ambiguity, Courts have adopted the methodology detailed in the Department of Labor's Field Operations Handbook. *See Hatmaker,* 2019 WL 5725043, at *6 (granting delivery drivers' motion for summary judgment); *see also Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (granting Rule 23 class certification); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, *1 (Nov. 25, 2019) (granting final approval of Rule 23 settlement and adopting DOL Handbook standard).

37. Specifically, the DOL Handbook's rule is:

**30c15 Car expenses: employee's use of personal car on employer's business.** In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

(a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where

4

the IRS rate changes during the investigation period, the applicable rates should be applied on a prorate basis.

38. "In the pizza delivery driver context, … determining and maintaining records of each employee's actual expenses is a cumbersome task for the employer." *Hatmaker*, 2019 WL 5725043, *3. As a result, the Handbook standard "giv[es] employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." *Id.*

## **LEGAL STANDARDS APPLICABLE TO DEFENDANT'S TIP CREDIT VIOLATIONS**

39. Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage. However, in order to take advantage of these wage provisions, the employer must meet certain strict notification requirements.

40. According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

41. As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

42. First, the employer must notify the employee of the amount of the cash wage the employer is paying the tipped employee and that amount must equal at least $2.13 per hour.

5

43. Second, the employer must notify the tipped employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

44. Third, the employer must inform the tipped employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

45. Fourth, the employer must notify the tipped employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

46. Finally, the tipped employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

47. An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[1] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

48. Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the

---

[1] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

49.  The tip credit may also be applied to an employer's overtime obligations. *See* 29 C.F.R. § 531.60. "To illustrate how this works, an employee working overtime must be paid $10.88 per hour—one and one-half times $7.25." *E.g. Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1033 (4th Cir. 2020). "The employer can still use the $5.12 tip credit but not more, meaning the hourly wage for overtime must be $5.76- $10.88 minus a $5.12 tip credit." *Id.*

## FACTS

50.  At all relevant times during her employment, Defendant paid Plaintiff an hourly wage of approximately $5.50 while he was making deliveries for Defendant.

51.  At all relevant times, Defendant failed to pay Plaintiff, the Collective Members and the Class Members the legally required minimum wage and overtime wages because Defendant failed to adequately reimburse them for their automobile expenses or other job-related expenses.

52.  According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.  2019: 58 cents/mile
   b.  2020: 57.5 cents/mile
   c.  2021: 56 cents/mile
   d.  2022 (1st half): 58.5 cents/mile
   e.  2022 (2nd half): 62.5 cents/mile

53.  Plaintiff and the Collective Members were required to purchase gasoline, oil and other fluids, vehicle parts, auto repair and maintenance parts and services, auto insurance, cell phones and phone service for the benefit of Defendant.

7

54. Defendant also made deductions from Plaintiff's and the Collective Members' pay for uniforms which Defendant requires Plaintiff and the Collective Members to wear in their work for Defendant. As such, these uniform deductions are made primarily for the benefit of Defendant.

55. Plaintiff's and the Collective Members' cars depreciated in value as a result of their work for Defendant.

56. Defendant never attempted to track how much money Plaintiff and the Collective Members were paying out of pocket in order to make deliveries on Defendant's behalf.

57. Defendant never required, requested or permitted Plaintiff and the Collective Members to record or report the expenditures they made for their cars, gasoline, and/or for other job-related expenses.

58. At all relevant times, rather than reimbursing Plaintiff and the Collective Members for their actual delivery-related expenses, Defendant paid Plaintiff a commission of approximately 8% of the price of the order being delivered.

59. At all relevant times, the average price of the order delivered by Plaintiff and the Collective Members was approximately $30.00. As such, Plaintiff and the Collective Members were compensated an average of $2.40 per delivery for their delivery-related expenses.

60. Plaintiff and the Collective Members drove approximately 10 miles per delivery during their employment for Defendant.

61. Thus, Defendant's average effective reimbursement rate for Plaintiff was approximately 24 cents per mile ($2.40 per delivery / 10 average miles per delivery).

62. As a result of the automobile and other job-related expenses and deductions incurred by Plaintiff and the Collective Members were deprived of minimum wage and overtime wages guaranteed to them by the FLSA.

8

63. Defendant likewise has a company policy of failing to ensure that Plaintiff and the Collective Members were properly notified and informed of all of the legal requirements which must be met in order to take a tip credit against delivery drivers' wages.

64. Despite taking a tip credit against Plaintiff's and the Collective Members' wages, Defendant failed to inform them that their cash wage had to be at least $2.13 per hour under federal law.

65. Despite taking a tip credit against Plaintiff's and the Collective Members' wages, Defendant failed to inform them that the amount of the tip credit could never exceed $5.13 per hour under federal law.

66. Despite taking a tip credit against Plaintiff's and the Collective Members' wages, Defendant failed to inform them that they must the amount of tips they received plus their hourly wage must equal at least $7.25 per hour under federal law.

67. Despite taking a tip credit against Plaintiff's and the Collective Members' wages, Defendant failed to inform them that all tips received must be retained by them except for in a valid tip pooling arrangement.

68. In fact, by requiring Plaintiff and the Collective Members to pay for all vehicle and delivery related expenses as detailed herein, Defendant did not permit Plaintiff and the Collective Members to retain all tips received.

69. Despite taking a tip credit against Plaintiff's and the Collective Members' wages, Defendant failed to inform them that no tip credit could be taken if they were not informed of the of the tip credit requirements of the FLSA.

70. Defendant was aware or should have been aware of the minimum wage and overtime requirements of the FLSA.

71. By failing to adequately reimburse Plaintiff and the Collective Members for job-related expenses as described herein, Defendant has willfully violated the minimum wage and overtime provisions of the FLSA.

72. By failing to adhere to the tip credit requirements of the FLSA, but nonetheless taking a tip credit against Plaintiff's and the Collective Members' wages, Defendant willfully violated the minimum wage and overtime provisions of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

73. Plaintiff brings the First and Second Counts of this Complaint on behalf of the following individuals:

> All current and former delivery drivers employed at any of Defendant's Mad Mushroom Pizza locations at any point during the three years prior to the filing of this Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

74. At all relevant times, Plaintiff and the Collective Members have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendant's decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the Collective Members minimum wage and overtime for all hours worked. Plaintiff's claims are essentially the same as those of the FLSA Collectives.

75. Defendant's unlawful conduct is pursuant to an enterprise-wide policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the Collective Members.

76. Defendant was aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs, gasoline, cell phones and phone service for delivery drivers.

77. Defendant was aware or should have been aware that federal law prohibited them from taking "kickbacks" from the wages of delivery drivers.

78. Defendant was aware or should have been aware of the tip credit notification requirements of the FLSA but they nonetheless failed to comply with the same.

79. Defendant's unlawful conduct has been widespread, repeated, and consistent.

80. This action is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

81. The Collective Members are readily identifiable and ascertainable.

## CAUSES OF ACTION

### Count One
### Fair Labor Standards Act – Vehicle and Delivery Related Expenses
### On behalf of Plaintiff and Collective Members

82. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

83. Plaintiff and the Collective Members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

84. The minimum wage requirements of the FLSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of

the Act in any workweek when the cost of such tools purchased by the employee cuts into the **minimum or overtime wages**. 29 C.F.R. § 531.35 (emphasis added).

85. It is well established that, in the pizza delivery context, employers have two options to comply with the minimum wage directives of the FLSA: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." *Hatmaker*, 2019 WL 5725043, *3 citing DOL Field Operations Handbook 30c15.

86. At all relevant times, Plaintiff and the Collective Members were required to provide their own vehicles, cell phones and phone service to deliver Defendant's pizzas and related food products and beverages.

87. At all relevant times, Defendant never kept track of the actual vehicle related expenses incurred by Plaintiff and the Collective Members.

88. At all relevant times, rather than reimbursing Plaintiff and the Collective Members for their actual delivery-related expenses, Defendant paid Plaintiff a commission of approximately 8% of the price of the order being delivered.

89. At all relevant times, the average price of the order delivered by Plaintiff and the Collective Members was approximately $30.00. As such, Plaintiff and the Collective Members were compensated an average of $2.40 per delivery for their delivery-related expenses.

90. Plaintiff and the Collective Members drove approximately 10 miles per delivery during their employment for Defendant.

91. Thus, Defendant's average effective reimbursement rate for Plaintiff and the Collective Members was approximately 24 cents per mile ($2.40 per delivery / 10 average miles per delivery).

92. At all relevant times, Defendant did so while also suffering or permitting Plaintiff and the Collective Members to work more than forty hours in a given workweek.

93. As a result of the forgoing actions, Defendant has violated the minimum wage and overtime provisions of the FLSA.

94. Defendant was or should have been aware of the minimum wage and overtime requirements of the FLSA.

95. Defendant has willfully violated the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206 and 207.

96. Plaintiff and the Collective Members have been damaged by Defendant's willful failure to pay minimum wage and overtime as required by law.

97. As a result of Defendant's violations of the FLSA, Plaintiff and the Collective Members, are entitled to all unpaid minimum wages and overtime wages to be proven at trial, an additional amount equal to all such unpaid wages as liquidated damages, reasonable attorneys' fees, and costs.

<u>**Count Two**</u>
**Fair Labor Standards Act – Tip Credit Notice**
**On behalf of Plaintiff and the Collective Members**

98. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

99. Under the FLSA, an employer must notify the employee (1) of the amount of the cash wage the employer is paying the tipped employee and that amount must equal at least $2.13 per hour; (2) that the amount the employer is claiming as a tip credit which the cannot exceed $5.12 per hour; (3) that the tip credit claimed cannot exceed the actual amount of tips received by

the employee; (4) that that all tips received are to be retained by the employee except for a valid tip pooling arrangement; and (5) that the tip credit will not apply unless the employee has been informed of these provisions.

100. These same requirements are applicable each year during which the minimum wage has changed during time period relevant to this lawsuit.

101. At all relevant times, Defendant failed to ensure that Plaintiff and the Collective Members were properly notified and informed of all of the legal requirements which must be met in order to take a tip credit against delivery drivers' wages.

102. Moreover, by making Plaintiff and the Collective Members pay for job-related expenses as described herein, Defendant did not ensure that Plaintiff and the Collective Members retain all of their tips, thereby forfeiting Defendant's ability to take a tip credit against Plaintiff and the Collective Members' wages.

103. Defendant was aware or should have been aware of the tip credit notice requirements of the FLSA, but Defendant nonetheless failed to comply with the same. As such, Defendant's violation of the FLSA has been willful.

104. As such, Defendant has violated the minimum wage and overtime requirements of the FLSA.

105. As a result of Defendant's violations of the FLSA, Plaintiff and the Class Members, are entitled to all unpaid wages to be proven at trial, an additional amount equal to twice the amount of all such unpaid wages as statutory damages, reasonable attorneys' fees, and costs.

**WHEREFORE**, Plaintiff, Lyle Guinnup, prays for all of the following relief:

A. Designation of this action as a collective action on behalf of Collective Members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them

of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum and overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. An award of prejudgment and post-judgment interest.

D. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

E. A service award to Plaintiff in recognition of his efforts on behalf of the Collective Members.

F. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/      James L. Simon
James L. Simon (*pro hac vice submitted*)
SIMON LAW CO.
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, Ohio
Phone: (216) 816-8696
Email: james@simonsayspay.com

/s/      Michael L. Fradin
Michael L. Fradin  (*pro hac vice forthcoming*)
The Law Office of Michael L. Fradin
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Phone: 847-644-3425
Fax: 847-673-1228
Email: mike@fradinlaw.com

*Counsel for Plaintiff and the Putative Collective*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/     *James L. Simon*